THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

CATHERINE KELLY, Admx.

*Filed at Springfield April 5, 1889.*

1. NEGLIGENCE—*what will constitute.* A construction train on a railroad, in approaching a station, made a flying switch, whereby a collision occurred between the tender of the engine and the caboose car, after which the engine moved forward and struck one of the cars standing on a side-track, throwing it forward against a car upon which iron was being loaded by men under a section-boss, without any notice to them. One of the men, in attempting to reach the platform, was struck and killed by the train coming down the track at the rate of eight miles an hour: *Held,* that the jury might well infer negligence on the part of the railway company from these facts, and that it could not be said there was no evidence tending to show negligence.

2. SAME—*fellow-servants—whether the relation exists.* A section-hand, whose duty it was to repair tracks, etc., under the direction of his section-boss was required to go upon a construction train and assist in unloading rock for ballasting the road. After this was done, the section-hand returned to his station and resumed his labors as such in loading iron on a car on the side-track, and while so engaged was killed by the construction train: *Held,* that when the accident occurred the section-hand was not a fellow-servant with those in charge of the construction train, and owed no duty to them.

3. APPEAL—*reviewing facts—negligence as a question of fact.* Whether the death of a person was caused by his own negligence or that of the defendant, is a question of fact, not reviewable by this court in an action by the personal representative of the deceased.

4. SAME—*fellow-servants—question of fact—not reviewable.* Whether a servant of a railroad company killed by a construction train is a fellow-

servant of those in charge of the train at the time of the accident, is a question of fact, and not one of law for the court, and the finding of the Appellate Court as to such fact is conclusive.

5. So in an action against a railway company to recover damages for the killing of the plaintiff's intestate while engaged as a laborer in loading iron upon a car on a side-track, by a construction train, the defendant asked the court to instruct the jury, that under the facts detailed in evidence, showing the relations of the train crew and the deceased, and their association with him at the time of the injury, the deceased and such crew were fellow-servants, and, being such, the jury should find for the defendant, which was refused : *Held*, properly refused, as, if given, the instruction would have invaded the province of the jury, it being a question of fact whether the crew of the train and the deceased were fellow-servants.

APPEAL from the Appellate Court for the Third District ;— heard in that court on appeal from the Circuit Court of McLean county ; the Hon. OWEN T. REEVES, Judge, presiding.

Mr. ISAAC N. PHILLIPS, and Messrs. WILLIAMS & CAPEN, for the appellant :

Patrick Kelly's death was caused by his own want of ordinary care for his personal safety, and not by the negligence of appellant.

No recovery can legally be had in this case, for the reason that Patrick Kelly was the fellow-servant of the men who operated the train by which he was struck. *Abend* v. *Railroad Co.* 111 Ill. 202 ; *Railroad Co.* v. *Geary,* 110 id. 383 ; *Valtez* v. *Railway Co.* 85 id. 500 ; *Railroad Co.* v. *Murphy,* 53 id. 336 ; *Railway Co.* v. *Durkin,* 76 id. 395 ; *Railway Co.* v. *Britz,* 72 id. 256 ; *Railroad Co.* v. *Keefe,* 47 id. 108 ; *Railroad Co.* v. *Cox,* 21 id. 20 ; *Railroad Co.* v. *Moranda,* 93 id. 302 ; *Railroad Co.* v. *Hoyt,* 16 Bradw. 237 ; *Railroad Co.* v. *O'Bryan,* 15 id. 134.

The court erred in not properly instructing the jury as to the law of fellow-servants.

It is a question of law whether there is evidence tending to prove a cause of action. *Railroad Co.* v. *Estes,* 96 Ill. 470.

Messrs. Stevenson & Ewing, for the appellee:

Kelly and the train crew in charge of the freight train were not fellow-servants. *Ryan* v. *Railroad Co.* 60 Ill. 171; *Railway Co.* v. *Ross,* 112 U. S. 377; *Railway Co.* v. *Moranda,* 93 Ill. 302; *Railroad Co.* v. *Powers,* 74 id. 341; *Railroad Co.* v. *May,* 108 id. 288; *Railroad Co.* v. *Bliss,* 6 Bradw. 411; *Rolling Mill Co.* v. *Johnson,,* 114 Ill. 57; *Railroad Co.* v. *O'Conner,* 77 id. 391.

Imprudent conduct from sudden fright is chargeable to the original wrongdoer. *Collins* v. *Davidson,* 19 Fed. Rep. 83; *Stokes* v. *Saltenstall,* 13 Pet. 189; *Jones* v. *Boyce,* 1 Starkey, 493; *Railroad Co.* v. *Dignan,* 56 Ill. 487; *Railroad Co.* v. *Garvy,* 58 id. 83; *Railroad Co.* v. *Yarwood,* 17 id. 509; *Marks* v. *Railway Co.*

It is negligence in a railroad company to make "running" or "flying" switches. *Railroad Co.* v. *Triplett,* 38 Ill. 482; *Railroad Co.* v. *Dignan,* 56 id. 487; *Railroad Co.* v. *Baches,* 55 id. 379.

It is negligence in a railroad company to run cars in on a side-track, where other cars are standing and persons working about them, without giving notice of an intention to do so. *Rolling Mill Co.* v. *Johnson,* 114 Ill. 57.

Mr. Chief Justice Craig delivered the opinion of the Court:

This was an action brought by Catherine Kelly, administratrix of the estate of Patrick Kelly, deceased, against the Chicago and Alton Railroad Company, to recover damages for the death of Patrick Kelly, which was caused, as is alleged, by the negligence of the defendant. On a trial before a jury, in the circuit court, a judgment was rendered in favor of the plaintiff, which, on appeal, was affirmed in the Appellate Court.

Various errors have been assigned on the record by counsel for the defendant, but many of them relate to questions of fact which, under our present statute, are not reviewable in this

court. Such questions of law as arise on the record and are subject to review in this court, will be considered.

The facts which led to a verdict in the circuit court may be briefly stated, as follows: Kelly was working for the company as a section-hand, under James Mehan, a section-boss. Mehan testified that Kelly's duties were as follows: "I was his foreman. I had six men working under me. The men under me had to do all the necessary work,—anything that was ordered to be done under my control. The men under me were doing track repairing. It was our business to keep the track in repair. I had seven miles under my control. The men under me threw up embankments, raised up the track, put in rock and tiled under it, attended to the fences along the track, and the ballasting, and any other thing we had to do in the line of repair. It sometimes becomes my duty to shove cars from one place to another with my men. I take hold of them to shove; do not get on the engine to run them; simply shove the cars from one place to another on the track,—that is all I have to do with the cars."

On the 5th day of January, 1886, a construction train left Bloomington with twenty-two cars loaded with rock, to be distributed along the track a few miles south-west of Hopedale, to be used in ballasting the track. The train had on board an engineer, fireman, conductor, and two brakemen. The section-hands under Mehan, including Kelly, boarded the train as it passed through Hopedale, for the purpose of assisting in unloading the rock along the track. The men finished unloading the rock between three and four o'clock, when the train returned to Hopedale. There the section-men left the train to resume their duties as section-hands. What occurred from that time to the death of Kelly is stated by the Appellate Court in its opinion, as follows:

"The train-men began to prepare the train for returning to Bloomington, and the section-men were ordered by Mehan, their foreman, to take some old iron which had been gathered

up along the road at some former time and placed on the depot platform, and carry it across the main track and place it on a flat-car standing on the side-track, just opposite the platform. This car was no part of the construction train. After some time spent by the train-men in switching and arranging their train for its return to Bloomington, they desired to transfer the engine from the south-western end of the train to the other, and they did so by a running or flying switch. The train was backed up on the main track towards Bloomington a sufficient distance for the purpose intended, and then started back, and after having acquired a speed of some eight miles an hour, the engine was cut loose from the train, and, increasing its speed, ran in upon the side-track, where three or four cars were standing, upon one of which the old iron was being loaded by Kelly and others. The engine did not go far enough upon the side-track to let the train pass it without a collision, but the tender of the engine was struck by the caboose, breaking off the cross-beam and step of the caboose and injuring the tender. The engine was at once moved forward by the engineer, striking one of the cars standing on the side-track with such force as to break off the cow-catcher, break the headlight and the cast-iron heading of the boiler, knock the trucks from under the car in front, and throw it forward against the car upon which the iron was being loaded, and which, from the force of the blow, was moved forward about its length. It produced considerable noise and confusion. Kelly, with another man, was at this moment placing a large piece of iron upon the car, and they had to step along with the moving car to keep it from falling to the ground. As soon as they could let go of it they did so, and turned to go across the main track to the platform. The train, with the caboose in front, was coming down the track at the rate of about eight miles per hour. Kelly's companion succeeded in reaching the platform, but Kelly was struck and killed by the train."

41—127 ILL.

The same argument relied upon in the Appellate Court to reverse the judgment of the circuit court has been filed by counsel for the railroad company here. The first point relied upon in that argument is, that Kelly's death was caused by his own want of ordinary care for his personal safety, and not by the negligence of the defendant. This was one of the controverted questions of fact in the circuit court, which, under our statute, is not reviewable here.

But it is argued that there is no evidence whatever tending to establish negligence on the part of the defendant. This is a misconception of the facts established by the evidence. The making of a flying switch, (which is of itself dangerous,) the collision between the tender of the engine and the caboose, the moving of the engine forward by the engineer, striking one of the cars standing on the side-track, throwing it forward against the car upon which the iron was being loaded by Kelly, without any notice whatever to him, were facts from which the jury might infer negligence.

The next point relied upon in the argument is, "no recovery can be had, for the reason that Kelly was a fellow-servant of the men who operated the train by which he was struck and killed." Whether the deceased and those in charge of the construction train were, when the accident occurred, fellow-servants, was a question of fact, to be determined from the evidence. (*Indianapolis and St. Louis Railroad Co.* v. *Morgenstern*, 106 Ill. 216; *Chicago and Northwestern Railway Co.* v. *Moranda*, 108 id. 576.) In the last case cited, in speaking in reference to those in charge of the train, and the person who was injured, it is said: "Whether they were so co-operating or consociating is a question of fact for the jury, and not of law for the court. The question, then, being one of fact, and having been passed upon by the Appellate Court, the decision of that court can not be reviewed here."

The next point relied upon in the argument is, that the court erred in refusing defendant's fourth instruction, as follows:

"You are instructed, that under the facts of this case, as detailed in evidence, showing the relations of the train crew and Kelly, and their association with Kelly on the day and at the time of the injury, the said Kelly and said crew were fellow-servants, and being such, there is no liability in this case, and the jury should find defendant not guilty."

The court had no right to invade the province of the jury, which it would have done had this instruction been given. It was a question for the jury, and not for the court, whether the facts, all considered, made those in charge of the train, and Kelly, fellow-servants.

It is, however, strenuously insisted that Kelly and the men who were operating the construction train were fellow-servants; that there was no evidence tending to prove the contrary, or tending to prove a state of facts from which the contrary could be inferred. We have not been able to agree with counsel in the view they have taken of the evidence. Kelly, when killed, was working as a section-hand under a section-boss. He had no connection whatever with the construction train, or those who had the charge of that train. The construction train was under the control of a conductor, to whom Kelly owed no duty of any character. It is true, that during the day Kelly had, under the order of his section-boss, gone out on the construction train and assisted to unload the rock which had been shipped out for the purpose of ballasting the track; but after the train was unloaded, and Kelly returned to Hopedale, his connection with the train terminated. He then resumed his duties as a section-hand, and after commencing work under his section-boss, he owed no more duty to the construction train, and had no more to do with it than if he never had worked upon it. In *Chicago and Northwestern Railroad Co.* v. *Moranda,* 108 Ill. 580, where the plaintiff, who had charge of a section of the road, was injured by a heavy piece of coal falling from a passing train, it was contended there, as here, that the plaintiff was a fellow-servant with those in charge of

the passing train, and in discussing the question of fellow-servants, it is said: "In the former opinion in this case we held, that in order to constitute servants of the same master fellow-servants, within the rule *respondeat superior*, it is not enough they are engaged in doing parts of some work or in the promotion of some enterprise carried on by the master not requiring co-operation, nor bring the servants together or into such personal relations that they can exercise an influence upon each other promotive of proper caution in respect of their mutual safety, but it is essential that they shall be, at the time of the injury, directly co-operating with each other in the particular business in hand, or that their mutual duties shall bring them into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution. We feel constrained to adhere to this ruling." See, also, *North Chicago Rolling Mill Co.* v. *Johnson*, 114 Ill. 57, where the same doctrine is announced.

What co-operation was there, at the time of the injury, it may be asked, between Kelly, who was working as a section-hand under the direction of a section-boss, and the conductor and engineer of the construction train? None whatever; and yet it is claimed they were fellow-servants. Other cases holding the same doctrine as the two cited, as to fellow-servants, might be referred to, but it will serve no useful purpose to do so. Under the facts shown in evidence we think it plain that Kelly was not a fellow-servant with those in charge of the construction train.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*